

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2009

# USA v. John George

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1515

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. John George" (2009). *2009 Decisions.* Paper 1882.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1882

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1515

_____

UNITED STATES OF AMERICA

v.

JOHN PATRICK GEORGE,
a/k/a JOHN PATRICK HOLGUIN,
a/k/a JOHN GEORGE PATRICK,
a/k/a JOHN PATRICK HOQUIN,
a/k/a DEAN GEORGE,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cr-00161)
District Judge: Honorable Donetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
February 6, 2009

Before:  McKEE, JORDAN, and LOURIE*, *Circuit Judges.*

(Filed: February 11, 2009)

_____

OPINION OF THE COURT

_____

_____
        *Honorable Alan D. Lourie, Circuit Judge of the United States Court of Appeals
for the Federal Circuit sitting by designation.

LOURIE, *Circuit Judge*.

John Patrick George appeals from the decision of the United States District Court for the Western District of Pennsylvania denying George's motions to suppress certain evidence. *United States v. George*, Criminal No. 06-161, 2007 U.S. Dist. LEXIS 33068 (W.D. Pa. May 4, 2007) ("*George I*"); *United States v. George*, Criminal No. 06-161 (W.D. Pa. July 20, 2007) ("*George II*"). Because George has failed to show that the District Court erred in its evidentiary decisions, we affirm.

## I. BACKGROUND

George was stopped by Officer Hughes of the Mount Lebanon, Pennsylvania Police Department on December 24, 2004. Hughes had previously been informed of a report that a business was to be burglarized over the Christmas weekend and had been given specific information about the prospective burglar's truck, including its color, make, model, and license number. Hughes was also told that the suspected burglar did not have a valid Pennsylvania driver's license.

Hughes observed the truck described in the report and followed it. After the truck made several turns, Hughes stopped the truck and told the driver and passenger that they had been stopped for failing to properly use a turn signal. Hughes asked George for identification, and he produced a Florida driver's license, a Pennsylvania registration card, and a Pennsylvania insurance card. George and his passenger were detained for about thirty minutes while Hughes and other officers who had arrived at the scene checked George's identity. After telling George he was free to leave, Hughes asked to

look into the truck, and George consented. The officers found and seized binoculars, ski masks, a notebook with businesses and social clubs noted, sledge hammers, chisels, metal cutting blades, gloves, and ropes. George was then permitted to leave.

On January 28, 2005, pursuant to 18 Pa. C.S.A. § 5761, Magistrate Judge John Zottola authorized the installation and use of a mobile tracking device to track George's truck. With the mobile tracking device, on April 25, 2005, George was tracked to a grocery store and arrested for burglary and other offenses. After George's arrest, state troopers went to George's house and searched it upon obtaining his wife's consent. The troopers found and seized a receipt for a storage unit and applied for a warrant to search the storage unit. Pursuant to the search warrant, the storage facility was searched on April 26, 2005, and two weapons were seized, although neither weapon was mentioned in the search warrant. George was indicted by a grand jury for possession of a firearm after having been convicted of a crime punishable by a term of imprisonment in excess of one year.

George moved to suppress certain evidence, challenging, *inter alia*, the propriety of a traffic stop and the search of his vehicle on December 24, 2004, the propriety of the order dated January 28, 2005, which had authorized the use of a mobile tracking device, and the search of the storage facility on April 28, 2005. The Court found the traffic stop for a technical violation of the motor vehicle code (*i.e.*, failing to use a turn signal) to be legitimate, even if the stop was a pretext for an investigation of some other crime, citing *Whren v. United States*, 517 U.S. 806 (1996), and *United States v. Burks*, 2007 WL

128005 (W.D. Pa. Jan. 11, 2007). *George I*, 2007 U.S. Dist. Lexis 33068, at *3. The Court thus denied the motion with respect to the traffic stop. The Court also denied the motion with respect to the warrantless search of George's truck because it found credible Hughes' testimony that George had consented to the search, especially given a video of the incident showing George opening both the vehicle door and the door to the cab of the truck for the officers' inspection. *Id.* The Court denied the motion with respect to the seizure of items from the vehicle, as the items were clearly tools commonly used for theft, and Hughes had had George's consent and there was probable cause to believe the items were instruments of crime. *Id.*

The Court denied the motion with respect to the installation of the mobile tracking device, stating that "[t]he statute authorizing the installation and use of a Mobile Tracking Device is not constitutionally infirm. No search occurred and [George] had no legitimate expectations of privacy with respect to the tracking device while driving his vehicle on public roadways." *George II*, Criminal No. 06-161, slip op. at 2.

The Court finally denied the motion with respect to the search of the storage facility, reasoning that "the search warrant[ was] entered into evidence and demonstrate[d] clearly the existence of probable cause." *George I*, 2007 U.S. Dist. Lexis 33068, at *4. According to the Court, "[t]he circumstances which occurred on December 24, 2004, along with the observations of April 23, 2005 and April 25, 2005 provided a substantial basis for the issuance of the warrant[]." *Id.* The Court later clarified its statement, saying that it had "never ruled that [George] lacked standing to contest the

search of storage unit," but instead had "ruled that there was a substantial basis for the magistrate's determination of probable cause for the issuance of the search warrant." *George II*, Criminal No. 06-161, slip op. at 1.

George was convicted and sentenced, and he timely appealed the final judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

"We review the district court's denial of [a] motion to suppress for clear error as to underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (internal quotation marks omitted). We review the issuance of a search warrant to see whether the magistrate had a "substantial basis" for concluding that probable cause was present. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).

On appeal, George argues that the District Court erred in denying his suppression motions, and that the judgment and sentence should therefore be vacated. George asserts that the traffic stop was unlawful because it was pretextual and was effected only to allow a greater intrusion. George also argues that his subsequent half-hour detention was unreasonable because it was longer than necessary to issue a warning while he was not free to leave, and that the search of his truck was nonconsensual, either because he did not consent or because the traffic stop was coercive. Thus, according to George, the seizure of items should have been suppressed as the fruit of an unlawful search. George also argues that the state troopers lacked any cause or basis in their application for the

mobile tracking device, as they relied on a confidential informant without providing any information on the informant's reliability, and they lacked probable cause to obtain a warrant to search George's storage unit, as there was no evidence that the items listed might be found in the storage unit. According to George, the seizure of the two handguns should therefore also be suppressed as fruit of the unlawful search.

The government responds that the traffic stop was not unlawful because the District Court found that George turned without signaling, a determination that is entitled to substantial deference, and even a pretextual stop is legitimate if it is based on a violation of a traffic code. The stop was not unreasonably long, according to the government, because the stop required extra time as circumstances unfolded, each requiring further investigation. The government also argues that the officers searched George's car pursuant to his consent, and the District Court's credibility finding to that effect was not clearly erroneous, as the evidence showed George nodding his head in consent and opening the doors to his truck. The application for the mobile tracking device was sufficient, according to the government, because it relied not only on the tip from the confidential informant, but also on the seized evidence from the traffic stop and the fact that the circumstances corroborated the informant's tip. Finally, the government argues that the officers had probable cause to obtain a search warrant, as the magistrate need only have reasonably inferred that George would store the fruits of his burglaries in the storage unit, providing a nexus between the items listed and the storage unit.

We agree with the government that the District Court permissibly denied George's

motions to suppress.  First, the traffic stop was not unlawful.  A traffic stop is reasonable as long as "an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006).  Thus, "any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren*, 517 U.S. 806).  Here, the District Court believed, after hearing evidence from both sides, that George had failed to use his turn signal.  The district court's credibility determination was not clearly erroneous, as George, when asked whether he had signaled for all of his turns, equivocally stated: "I thought I did.  I could have swore I did." *See Givan*, 320 F.3d at 458 (reviewing factual determinations for clear error).  Thus, George's failure to use his turn signal, even if a pretext rather than the actual motivation for the stop, rendered the traffic stop lawful.

Second, we agree with the government that the stop was not unreasonably long.  Most of the stop was spent waiting for an officer to go to the station to check whether George was the same person as another John George whose Pennsylvania driver's license had been suspended.  The stop ended when, after about thirty minutes, the officer returned with a picture of the other John George, and George was given his license and told he was free to leave. *See id.* (recognizing that traffic stop ends and consensual encounter begins once motorist's documents are returned to him and he is told that he is free to leave).  The similarity of the two names (both John George, with different middle

initials) gave the officers reasonable suspicion that George may have been driving with a suspended license, justifying his detention until his identity was verified. The verification did not take unreasonably long, as the officers did not have an on-board computer system that would allow them to access photographs or descriptive information with which to verify George's identity and thus had to leave the site to obtain verification. Third, the search of George's car was also justified, as the District Court was not clearly erroneous in finding that George voluntarily consented to the search, relying on the video of the incident that showed George voluntarily opening the doors of his truck to allow the search.

Finally, we agree with the government that the two warrants, for installing a mobile tracking device and for searching the storage unit, were supported by probable cause. In applying to install the mobile tracking device, the trooper set forth the content of the informer's tip and explained how that information had been corroborated by the events of December 24, 2004, including the traffic stop itself, statements made by George during the traffic stop, and seizure of the tools. (App. 86-89.) The affidavit also set forth George's criminal record, along with that of his passenger. (App. 89-92.) Thus, the affidavit did not rely solely on a tip from a confidential informant but contained corroborating evidence.

George argues that, in the application for a warrant to search his storage unit, there was no evidence that the items listed might be found in the storage unit. However, the magistrate issuing the warrant had a "minimum substantial basis" to conclude that the

items might be found in the storage unit. *Conley*, 4 F.3d at 1205. In his affidavit, the trooper explained that the search of George's home netted a receipt showing that George was actively renting the storage unit. (App. 123.) The trooper also described the earlier traffic stop and George's criminal record (App. 114-16), leading to a reasonable inference that George might have the listed stolen goods and tools that might be used for burglary. Given that the trooper had not found the items in George's home, the magistrate had a minimum substantial basis to conclude that they might be found in the storage unit he was actively renting. *See United States v. Whitner*, 219 F.3d 289, 296-97 (3d Cir. 2000) ("The issuing judge or magistrate . . . is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," including "normal inferences about where a criminal might hide stolen property."). We therefore agree with the government that the search warrant was supported by probable cause.

### III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's denial of George's motions to suppress evidence.